JOSEPH B. ROSE, Appellant, *v.* DAVID STEWART et al., Respondents.

*Evidence as to the quality and quantity of light received by a building — competency of a witness.*

Where the vital question of fact upon the trial of an action, by which the rights of the litigants were to be determined, was whether certain structures of the defendants deprived the plaintiff's building of the light and air to which it was entitled, a witness who occupied a part of the plaintiff's building, before and since the erection of the structures complained of, and who was engaged in an occupation requiring light, and whose business qualified him to judge of the quantity and quality of light received by said building, before and since the erection of such structures, is a competent witness upon the question as to whether less light or light of a poorer quality was enjoyed after the erection of such structures.

It is not necessary that a witness should be a scientific expert, capable of actually measuring the quantity of light, and of determining by scientific processes its quality, to qualify him to testify as to whether less light and light of a poorer quality was received after a certain event.

APPEAL by the plaintiff, Joseph B. Rose, from a judgment of the Supreme Court in favor of the defendants, entered in the office of

the clerk of the county of New York on the 28th day of June, 1893, upon the decision of the court dismissing the plaintiff's complaint upon the merits and for costs, rendered after a trial at the New York Special Term.

This action was begun December 26, 1890, to recover a judgment perpetually restraining the defendants from erecting and maintaining in a yard structures obstructing or preventing light and air from entering plaintiff's building from said yard. On the 13th of November, 1832, Nathaniel G. Carnes was the owner of Nos. 42 and 44 Cedar street and of Nos. 57 and 59 William street, the rears of which lots abutted. No. 44 was then wholly covered by a brick store, and there was a brick store on No. 42 about fifty feet deep north and south, leaving a yard about thirty feet long north and south and about twenty-five feet wide east and west which abutted Nos. 57 and 59 William street on the west. At this date Lynde Catlin owned No. 40 Cedar street, which was abutted on the south partly by Carnes' William street property and partly by said yard. November 13, 1832, Carnes and Catlin mutually executed a contract (duly recorded November 16, 1832, in the office of the register of the city and county of New York, in Book 289 of Conveyances, at page 449), which contained, among other recitals and covenants, the following:

" Whereas, the said Lynde Catlin is desirous to have the use of the privy in the yard of the stores of the said Nathaniel G. Carnes in common with the tenants of the surrounding stores, and also to use and enjoy the light and air appertaining to said yard for his said store now erecting as aforesaid, as will appear by the map hereto annexed.   *   *   *

" And the said Nathaniel G. Carnes does hereby give and grant unto the said Lynde Catlin, his heirs and assigns, the use, benefit and advantage of the privy in the yard of the stores of the said Nathaniel G. Carnes on William street aforesaid, in common with the tenants of the surrounding stores, and also the use, benefit and enjoyment of light and air for the said store of the said Lynde Catlin, so far as the same in common belongs and appertains to the yard aforesaid.   *   *   *

" *That in no case or under any pretense shall the said Lynde Catlin, his heirs or assigns, be deprived of the use or privilege of*

*access to and use of the privy therein, or the light and air as con-templated to be granted to or enjoyed by the said Lynde Catlin, his heirs or assigns.* \* \* \*

"And it is further mutually covenanted and agreed by and between the parties to these presents, that the triangular piece of ground in the rear of the lots Nos. 40 and 42 Cedar street, as delineated on the plan or map hereunto annexed, shall forever remain open for light and air, excepting that the said party of the second part (Catlin) reserves to himself, his heirs, administrators and assigns, the right to inclose the ground belonging to him, the said party of the second part (Catlin), with an iron railing and of putting steps to descend into the yard from the first or principal story of his building on said lot No. 40 Cedar street."

The ground embraced within the yard and owned by Catlin was a small triangular piece containing less than thirty square feet. The plaintiff has acquired No. 42 Cedar street, except a small triangular piece on the southeast corner of that lot forming part of the yard, through mesne conveyances, subject to the covenants above quoted, and the defendants have acquired Nos. 57 and 59 William street, through mesne conveyances, subject to said covenants. The court found:

"*Ninth.* That the defendants, prior to the commencement of this action, erected and are now maintaining in said yard, in immediate proximity to the rear wall of the building on the premises Nos. 57 and 59 William street, an iron cylinder or pipe of the diameter of about two feet, which extends from the ground in said yard to a point about two feet above the top of the rear wall of the building on the premises Nos. 57 and 59 William street, a height of about one hundred and fifty feet, and that the defendants, prior to the commencement of this action, also erected and constructed, and are now maintaining in said yard, two skylights or ventilating shafts, one of which is seven feet eight inches long by six feet five inches wide and four feet six inches in height, and the other of which is three feet seven inches long by four feet wide and four feet five inches in height.

"*Tenth.* There is no evidence that the said iron cylinder or pipe, or said skylights, substantially interfere with or obstruct the use, benefit or enjoyment of the light appertaining to the yard in the

rear of the premises Nos. 57 and 59 William street for the premises of the plaintiff No. 42 Cedar street."

The court found the following conclusions of law, the first and second upon the plaintiff's request, and the last upon the request of the defendants:

" *First.* That the plaintiff, at the time of the commencement of this action, was, and still is, entitled to the use, benefit and enjoyment of the light and air of the said yard, so far as the same in common belonged and appertained to the said premises No. 42 Cedar street, in the city of New York.

" *Second.* That the plaintiff is entitled to the use, benefit and enjoyment of the light and air of the said yard, which fell in and upon the said premises No. 42 Cedar street, as said light and air had existed prior to the erection of said cylinder or pipe, and of said skylights.

" The defendants are entitled to judgment against the plaintiff dismissing the complaint herein, with costs, and I order and direct judgment accordingly."

The plaintiff has not excepted to the ninth finding, but has to the tenth, and by six requests, asked, in various forms, the court to find the converse of the tenth finding, which requests were refused and exceptions filed. The plaintiff also excepted to the last conclusion of law above quoted, and requested the court to decide that the plaintiff was entitled to the judgment prayed for, which was refused and an exception filed.

*J. Treadwell Richards,* for the appellant.

*William Allen Butler,* for the respondents.

FOLLETT, J.:

The questions raised on this appeal arise on the exceptions filed to the findings and refusals to find facts, and the exceptions to the conclusions found and refused, and upon the exceptions taken to the exclusion of testimony offered by the plaintiff. The exceptions to the facts found and refused, and the exceptions to the conclusions of law found and refused, are not argued, but those taken to the exclusion of testimony are argued and relied on as grounds for a reversal of the judgment and for a new trial. The evidence con-

tained in the record sustains the facts found and the conclusions of law, and fully justifies the refusals to find facts and conclusions requested by the plaintiff. The only questions remaining to be considered are whether the testimony offered by the plaintiff and rejected by the court upon the defendants' motion was relevant to the issues, and if relevant and believable, would it have justified a judgment for the plaintiffs.

Thomas McMullin, a witness called and sworn in behalf of the plaintiff, testified that he was a steel plate photographer and printer, and occupied the second and fourth floors of 42 Cedar street (plaintiff's premises) before and since the erection of the structures complained of. He was asked: " Q. Did you have occasion, after that pipe was put up, to notice the relative amount of the light you received after it was put up as compared with what you received in that. easternmost window ?

" Mr. Butler.— I object to it as calling for a conclusion of the witness. [Objection sustained. Exception.]

" Q. Did you notice at any time after the standing pipe was put up the light which comes in in the easternmost window on your premises ?

" The Witness.—Yes.

" Q. What, if anything, did you notice ?

" Mr. Butler.—That is objected to. [Sustained. Exception.]

" Q. Had you noticed the quantity of light which came in that window before the standing pipe, the smokestack in the rear of 57 and 59 William street, was put up ?

" Mr. Butler.—I object to it on the ground that the witness has no means of determining; he is not an expert. [Sustained. Exception.]

" Q. State whether, after the erection of the standing pipe in the rear of the premises Nos. 57 and 59 William street, you observed any diminution of light coming in your easternmost windows ; if so, state to the court how much the diminution was as near as you can ? [Objected to on the same ground. Sustained. Exception.]

" Q. State any facts in regard to the light coming in those windows before and after the erection of this standing pipe and what were the differences ?

" Mr. Butler.—We object to it on the ground that it calls for

certain facts; he may state what the facts were at any time before and after; for him to determine whether there is a difference is objectionable. [Sustained. Exception.] "

Like facts were offered to be proved by this witness at folios 123, 125 and 135, and by John M. Coonan at folios 99, 100, 101, 106, 107 and 108, and by James B. Rose at folios 112 and 113, which were excluded on the objection of the defendants. The exclusion of this testimony was error. The vital issue of fact by which the rights of the litigants were to be determined was whether the defendants' structures deprived the plaintiff's building of "the light and air as contemplated to be granted to or enjoyed by the said Lynde Catlin, his heirs or assigns." The witness McMullin occupied part of the plaintiff's building before and since the erection of the structures complained of, and was engaged in an occupation requiring light, and his business qualified him to judge of the quantity and quality of light received from the courtyard before and since the erection of the structures objected to. It is not necessary that a witness should be a scientific expert, capable of accurately measuring the quantity of light and of determining by scientific processes its quality to qualify him to testify as to whether less light and light of a poorer quality was enjoyed after a certain event.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment reversed, new trial granted, with costs to appellant to abide event.